IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**VERONICA MAY VIGIL,**

      **Plaintiff,**

    **vs.**               **12cv1289 LH/RHS**

**CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,**

      **Defendant.**

## MAGISTRATE JUDGE'S ANALYSIS AND PROPOSED DISPOSITION

THIS MATTER comes before the Court on Plaintiff Veronica May Vigil's Motion to Reverse or Remand Administrative Agency Decision (Doc. 24).  The Court considered the Defendant's Response (Doc. 25), Plaintiff's Reply (Doc. 26), and the supporting documentation, and proposes that Plaintiff's Motion be granted.

### CASE HISTORY

Ms. Vigil asserts that she became disabled due to an arachnoid cyst at the base of her brain and tip of her spinal cord, memory loss, headaches, trouble concentrating, gait problems, depression, shaking, and trouble hearing (Doc. 15-8 at 17).  She filed her claim for social security disability benefits on January 25, 2010 (Doc. 15-7).  An Administrative Law Judge (ALJ) held a hearing on July 20, 2011, at which Ms. Vigil was represented by counsel (Doc. 15-3 at 21).  The ALJ afforded counsel the opportunity to question Ms. Vigil (Doc. 15-3 at 38).  On August 23, 2011, the ALJ issued a written decision that Ms. Vigil was not disabled (Doc. 15-3 at 12).  Ms. Vigil appealed to the Social Security Administration's Appeals Council, which declined review on October 23, 2012 (Doc. 15-3 at 2).  Ms. Vigil filed in this Court on December 11, 2012 (Doc. 1) for review of the ALJ's decision.

## ISSUES FOR REVIEW

This Court reviews the ALJ's decision-making process.  The ALJ is required to review Ms. Vigil's case in a sequential five-step process to determine if she is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the ALJ found in favor of Ms. Vigil, and the steps are mentioned here only as background.  At the first step of the analysis, the ALJ determined that Ms. Vigil is not engaged in "substantial gainful activity."  20 C.F.R. § 404.1571 (Doc. 15-3 at 14).  In the second step, the ALJ considered whether Ms. Vigil has a severe medical impairment (20 C.F.R. § 404.1520(c) and 20 C.F.R. § 416.920(c)) and found that Ms. Vigil have does cognitive disorder and posttraumatic stress disorder (Doc. 15-3 at 14).

For step three, the ALJ concluded that Ms. Vigil does not have an impairment that meets or medically equals one of the listed impairments (Doc. 15-3 at 14).  This conclusion is adverse to Ms. Vigil, and she argues that the ALJ erred by not addressing her post-concussion syndrome and depression (Doc. 24 at 16).

Prior to step four, the ALJ reviewed Ms. Vigil's residual functional capacity and determined that Ms. Vigil had the

> capacity to perform a full range of work at all exertional levels that does not require balancing; more than moderate exposure to noise; or exposure to hazardous conditions including dangerous moving machinery and unprotected heights.  The claimant can perform simple, routine tasks with the reasoning level one and can have occasional interaction with the public, but should avoid crowds.

(Doc. 15-3 at 16).  Ms. Vigil alleges that the ALJ erred by giving insufficient weight to the reports from medical providers (Doc. 24 at 18) and too much weight to physicians who never met her (Doc. 24 at 21).  The ALJ also found that the claimant's statements were not credible (Doc. 15-3 at 17), which Ms. Vigil argues was a finding not supported by substantial evidence (Doc. 24 at 23).

At the fourth step, the ALJ considered whether, in light of Ms. Vigil's residual functional capacity, Ms. Vigil could still perform her past relevant work.  The ALJ determined that the claimant could not perform any past relevant work as a childcare provider or home healthcare provider and companion (Doc. 15-3 at 19), which was a determination in her favor and therefore it is not disputed nor discussed here.

At step five, the ALJ determined whether Ms. Vigil could perform jobs in the national economy, given her age, education, work experience, and residual functional capacity assessment.  In part based on the Vocational Expert's testimony, the ALJ concluded that there were at least two jobs (cleaner or polisher) that Ms. Vigil could perform and therefore she was not considered disabled (Doc. 15-3 at 20).  Ms. Vigil does not allege that the ALJ made any specific error at step five (Doc. 24), so it is not analyzed here.

## STANDARD OF REVIEW

The Court's review of the administrative decision is both factual and legal.  The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Grogan v. Barnhart, 399 F.3d 1257, 1259 (10th Cir. 2005).  Substantial evidence is less than a preponderance, Fowler v. Bowen, 876 F.2d 1451, 1453 (10th Cir. 1989).

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases."  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

**ANALYSIS**

**The ALJ Erred By Not Addressing Ms. Vigil's Post-Concussion Syndrome and Depression (Step Three)**

For step three, the ALJ concluded that Ms. Vigil does not have an impairment that meets or medically equals one of the listed impairments (Doc. 15-3 at 14).  This conclusion is adverse to Ms. Vigil, and she argues that the ALJ erred at step three by not addressing her (1) post-concussion syndrome and (2) depression (Doc. 24 at 16).

At step three, the ALJ found "that the opinions of state agency physicians that the claimant's impairment(s) neither met nor equaled the severity of a listed impairment are well reasoned and supported by the evidence of record" (Doc. 15-3 at 15).  The ALJ considered the state agency physicians, but not Ms. Vigil's treating physician, who diagnosed post-concussive syndrome.  Ms. Vigil's treating physician, Dr. Simpson-Manske, repeatedly diagnosed post-concussive syndrome (Doc. 15-12 at 4 & at 9), brain injury (Doc. 15-12 at 6), post-concussive syndrome and mild traumatic brain injury (15-13 at 7), mild traumatic brain injury and post-concussive syndrome (Doc. 15-5 at 20 and Doc. 15-16 at 14) over several years.  Even if the ALJ missed reviewing some of these treating physician notes, Ms. Vigil's application for disability to the Social Security Administration listed short-term memory loss, trouble concentrating or focusing, and headaches as reasons why she was seeking disability (Doc. 15-8 at 17), and that should have caused the ALJ to more carefully review the complaints related to her head injury.

The ALJ's failure to mention the treating physician or to acknowledge the claimant's head injury at step three raises a red flag.  The ALJ must consider all medically determinable impairments; failure to do so is reversible error.  Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006) (citing applicable statute and regulations).  The Commissioner's argument that the ALJ considered the treating physician's diagnosis elsewhere in the sequential evaluation (Doc.

25 at 4) is unpersuasive given the adverse finding at step three.

The ALJ also did not consider whether Ms. Vigil's diagnosed depression met or medically equals one of the listed impairments even though depression was listed on her application for disability (Doc. 15-8 at 17). Ms. Vigil points to four different doctors who noted depression: Dr. Girardi, Dr. Simpson-Makse, Dr. Sobhani and Dr. Russell (Doc. 24 at 17). However, the ALJ mentioned only Dr. Russell at step three and did not mention depression, let alone analyze whether depression satisfied the impairment listings.

The Court concludes that remand is appropriate so that at step three the ALJ may fully consider whether post-concussion syndrome and depression meets or medically equals one of the listed impairments.

### Upon Remand, The ALJ Should Analyze and Explain the Weight Given to Treating and Consultative Providers (Residual Functional Capacity Step)

Prior to step four, the ALJ reviewed Ms. Vigil's residual functional capacity and determined that Ms. Vigil had the

> capacity to perform a full range of work at all exertional levels that does not require balancing; more than moderate exposure to noise; or exposure to hazardous conditions including dangerous moving machinery and unprotected heights. The claimant can perform simple, routine tasks with the reasoning level one and can have occasional interaction with the public, but should avoid crowds.

(Doc. 15-3 at 16). Ms. Vigil alleges that the ALJ erred by giving insufficient weight to the reports from treating providers, such as Dr. Simpson-Manske and Dr. Russell (Doc. 24 at 18). Presumably, Ms. Vigil contends that if the appropriate weight were given to the opinions of her treating physicians, then the ALJ's residual functional capacity assessment would have been more favorable to a disability finding.

As to Ms. Vigil's treating physician over the course of several relevant years, the ALJ stated, "I am aware that the claimant's treating physician, Dr. Simpson-Manske, has opined that

the claimant is disabled and unable to work. [citation omitted] However, as I find her opinion quite conclusory and not well supported by her own treatment records or the evidence when viewed in its entirety, I have assigned very little weight to her opinion" (Doc. 15-3 at 19).  The ALJ's analysis is equally conclusory because in the one paragraph of the ALJ opinion devoted to Dr. Simpson-Manske, the ALJ does not mention the doctor's February 2010 opinion or the diagnosis in July 2011 (Doc. 15-16 at 14).  In February 2010, Dr. Simpson-Manske stated,

> I have been caring for Mrs. Vigil since March 2009.  She has been followed at our clinic for many years.  She is unable to work due to chronic post concussive syndrome from MTBI (mild traumatic brain injury) secondary to trauma in early 2008.  Her symptoms include headaches, dizziness, a visual field defect, and memory problems.  These symptoms have made it extremely difficult for her to work.  I have recommended that she apply for disability.

(Doc. 15-13 at 7).  The omission of these treating physician records from the analysis means that the ALJ could not accurately determine if Dr. Simpson-Manske's opinions were well-supported, and therefore entitled to controlling weight consistent with the treating physician rule.  Upon remand, the Commissioner must consider these opinions.

The ALJ also discounted the assessment of Dr. Russell, a neuropsychologist who evaluated Ms. Vigil (Doc. 15-3 at 19).  The ALJ said Dr. Russell's testing was "questionable," but did not explain why it was questionable.  The ALJ reasoned that Ms. Vigil saw Dr. Russell "only once" (Doc. 15-3 at 19).  However, Dr. Russell saw Ms. Vigil three times.  If the ALJ was aware of only one visit with the claimant when in fact there were three consultations, then the undersigned cannot uphold the ALJ's decision to give minimal weight to Dr. Russell's opinion because it appears to be based on an incomplete review of the record.  On remand, the ALJ is requested to review all of the records Dr. Russell generated regarding Ms. Vigil and re-determine what weight is appropriate.

**Upon Remand, The ALJ Should Explain What Weight Was Given to the Non-Treating and Non-Examining Physicians, and Why (Residual Functional Capacity Step)**

Ms. Vigil asserts various errors regarding how the ALJ considered the opinions of the state agency physicians.  Generally, the ALJ must explain what weight is being given to the non-treating physician's opinion, and analyze why that weight was given, which was not done here.  Furthermore, "[i]f an ALJ intends to rely on a nontreating physician or examiner's opinion, [s]he must explain the weight [s]he is giving to it."   Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing federal regulations).  For the purposes of remand, the Court notes that the ALJ's opinion implicitly gives more weight to the opinions of state agency medical consultants than to Ms. Vigil's treating and consultative doctors (Doc. 15-3 at 18-19), because the ALJ's determination was consistent with the state agency physicians and not the treating physicians.  The Court is unable to determine what weight was given to the state agency physicians' opinions, why that weight was given, and why the state agency physicians should be relied on more than the treating physician, contrary to the treating physician rule.  Upon remand, the ALJ is requested to more thoroughly explain the reasoning.

**Upon Remand, the ALJ Should More Thoroughly Explain the Credibility Determination (Residual Functional Capacity Step)**

The ALJ also found that the claimant's statements were not credible (Doc. 15-3 at 16), which Ms. Vigil argues was a finding not supported by substantial evidence (Doc. 24 at 23).  Even though the ALJ's credibility determination is entitled to deference, White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002), the Court agrees with Ms. Vigil that the ALJ's credibility determination was not supported by substantial evidence.  The ALJ's findings in the written opinion (Doc. 15-3 at 17) are not consistent with the transcript of the hearing (Doc. 15-3 at 21-49).  For example, the ALJ noted that claimant's daily activities included driving (Doc. 15-3 at

7

18).  But the ALJ failed to reconcile that finding with Ms. Vigil's testimony to the ALJ regarding driving:

> ALJ: Are you able to drive?
>
> Claimant: I try not to, your honor, because I – I just try not to.  My daughter brought me today.
>
> ALJ: Do you have problems driving?
>
> Claimant: Well, to be honest with you, I've hit a few things.  I've hit a car.  I hit a fence, the porch.  And I hit a really big rock.
>
> ALJ: Were you just not paying attention to what you were doing?  Why were you hitting?
>
> Claimant: I felt like I had forgotten.  I walked out of the house.  I saw the car there.  But I guess from the time that I walked out and got into the car, I forgot that the car was there, and when I backed up I hit it.

(Doc. 15-3 at 31).  The ALJ pointed to Ms. Vigil's driving ability as one of the "daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," (Doc. 15-3 at 18), which was part of the reason for discrediting Ms. Vigil.  This conclusion appears to ignore, without explanation, significant evidence to the contrary and that was favorable to the claimant.  Upon remand, the ALJ must reconcile the contrary evidence in the record regarding Ms. Vigil's daily activities before determining that her daily activities undermine her credibility.

In conclusion, the Social Security Administration's decision that Ms. Vigil is not disabled is not supported by substantial evidence in the administrative record and the Court is persuaded that error occurred.  Therefore, the Court recommends that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 24) be granted and that the case be dismissed with prejudice.

Within fourteen (14) days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant 28 U.S.C. § 636(b)(1), file written objections to these proposed findings and recommended disposition.  A party must file any objections with the clerk of the district court within the fourteen (14) day period allowed if that party would like to have appellate review of the proposed findings and recommendations.  If objections are not filed, appellate review will not be allowed.

ROBERT HAYES SCOTT
United States Magistrate Judge